# EXHIBIT

# H

STATE OF NEW YORK
SUPREME COURT    :    COUNTY OF ERIE

THE PEOPLE OF THE STATE OF NEW YORK

-VS-

DAVID SELL

Defendant

AFFIDAVIT IN SUPPORT
OF PRE-TRIAL MOTION
IND. NO. 95-3212-001

STATE OF NEW YORK )
COUNTY OF ERIE    ) SS:
CITY OF BUFFALO   )

MARK A. WORRELL, ESQ.. being duly sworn deposes and says:

1)  He is the attorney for defendant DAVID SELL.

2)  He is familiar with the facts and circumstances surrounding this indictment.

3)  The defendant was indicted by an Erie County Grand Jury on or about December 23, 1996 and charged with Murder in the Second Degree an alleged violation of Penal Law Section 125.25-1, a class A Felony; Criminal Possession of a Weapon in the Second Degree an alleged violation of Penal Law Section 265.03, a class C Felony; and Reckless Endangerment in the First Degree an alleged violation of Penal Law Section 120.25, a class D Felony.

4)  The defendant was thereafter arraigned on said indictment on February 5, 1997 and entered a plea of not guilty.

## I.  FAVORABLE INFORMATION

5)  The defense moves this court for an order compelling the prosecution to disclose and divulge to the defense any

evidence in its possession favorable or exculpatory to the accused. This demand is made under the authority of <u>Brady vs. Maryland,</u> 373 US 83 (1963).

6) As used herein, "favorable information" includes any information which tends to detract from the prosecution's case or from the credibility of any of the prosecution's witnesses.

7) This information should include but not be limited to statements or Grand Jury testimony of witnesses, any books, papers, reports, photographs, hand written notes or synopses of statements made by witnesses or other tangible items of evidence in the custody or control of the prosecution or any governmental agents working under the supervision of the prosecution, favorable to or exculpatory of the defendant respecting the defendant's guilt, innocence or punishment.

8) This demand also specifically includes any information possessed by any agent of the government which has not yet been reduced to writing, or otherwise memorialized and which is known and which should therefore be so reduced and disclosed.

9) The above requested information is crucial to the preparation of the defense. It is believed that such requests will reveal favorable and material evidence and information which defendant is entitled to and requires to present a defense.

## II. DISMISSAL OF INDICTMENT

10) Pursuant to CPL Art. 210, defendant requests this Court to inspect the Grand Jury minutes and following their inspection, dismiss the instant indictment.

FLL
at Law
ite 525
202

11)    Article I, §6 of the N.Y.S. Constitution guarantees that "no person shall be held to answer for a capital or otherwise infamous crime ..... unless on indictment of a Grand Jury." (N.Y. Const. Art. I §6, <u>People vs. Lancaster,</u> 69 NY 2d 20, 511 NYS 2d 599 (1968), <u>People vs Ford</u>, 62 NY 2d 275, 476 NYS 2d 783 (1984)).

12)    A Grand Jury may indict a person only when the evidence before it is legally sufficient to establish that he or she has committed the offense charged. (<u>People vs Pelchat</u>, 62 NY 2d 97, 476 NYS 2d 79 (1984)). Determination of the legal sufficiency of the evidence is for the Grand Jury, not its legal advisor, the prosecutor (<u>People vs Batashire,</u> 75 NY 2d 306, 552 NYS 2d 896 (1990)).

13)    "Legally sufficient evidence" is defined as competent evidence, which, if accepted as true, would establish every element of an offense charged <u>and defendant's commission thereof</u>. (CPL §190.62(1), 70.10(1), <u>People vs Alexander</u>, 138 AD 2d 322, 527 NYS 2d 380 (1st Dept., 1988), <u>People vs Haney,</u> 30 NY 2d 328, 333 NYS 2d 403 (1972), <u>People vs Pelchat</u>, supra) (emphasis supplied).

14)    Defendant submits the proof presented at bar was insufficient.

15)    Deponent is at present unable to set forth with more particularity the manner in which the evidence presented was insufficient.    The burden rests with the People to establish that there exists "good cause" to deny a defense motion for review of grand jury minutes.

16) Deponent respectfully submits that the People cannot establish "good cause" for the non-disclosure of the minutes herein. Pursuant to CPL §210.30 this Court must grant defendant's motion and examine the grand jury minutes at a minimum in camera to determine whether the evidence presented was legally sufficient to establish that defendant committed each and every element of the crimes charged.

17) Following this Court's inspection of the Grand Jury minutes, defendant requests that they be turned over to defense to determine if additional motions are required.

18) Deponent also requests that any and all instructions given the grand jurors by the District Attorney prior to the commencement of any receipt of evidence, during the period of time in which evidence was heard, and prior to the jurors' rendering a vote in defendant's case, be inspected.

19) Deponent asserts that disclosure of those instructions will in no way prejudice the People's case, since the instructions do not contain testimony of any witnesses. Moreover, defendant's need for this information outweighs any argument of prejudice that might be made by the People.

## III.  SANDOVAL HEARING

20) The defendant herein at the time of trial , may have a prior criminal record. (A copy of the Defendant's criminal record, as produced by the District Attorney of Erie County, is annexed hereto, made a part hereof and labeled Exhibit A). Should the defendant wish to take the stand on his own behalf, to allow the District Attorney to cross examine or impeach him

!ARK A. WORRELL
arney and Counselor at Law
Delaware Avenue, Suite 525
Buffalo, New York 11202
(716) 815-5215
(FAX) (716) 815-5215

by offering proof of previous convictions is, in effect, to permit proof of the present charge by offering proof of the previous violations. The defendant has critical evidence to offer upon his own behalf. If he takes the witness stand, he will expose his criminal record. The degree of prejudice to flow will outweigh the probative value of evidence of the prior convictions to the issue of credibility. By keeping the Defendant from the stand, the Jury will not get the benefit of necessary evidence. He will therefor, be prevented from getting a fair trial, in violation of his due process rights under the Fourteenth Amendment to the United States Constitution and the Constitution of the State of New York. The defendant therefore, requests a hearing to determine which acts or convictions the District Attorney may cross-examine the defendant as to, should he decide to take the stand on his own behalf.

## IV. SUPPRESSION OF IDENTIFICATION TESTIMONY

### OR WADE HEARING

21)  Upon information and belief, the District Attorney of Erie County intends to introduce at the time of trial of this indictment identification testimony allegedly identifying the defendant as the person who committed the crimes charged in the indictment. Upon information and belief, the police utilized a photographic identification proceeding to identify the defendant. Annexed hereto, made a part hereof and labeled Exhibit B is the 710.30 Notice served upon the defendant at his arraignment. Said notice claims that the defendant was identified by Gerald Webb and Elizabeth Hernandez at 74 Franklin

.IARK A. WORRELL
.m.ney and Counselor at Law
Delaware Avenue, Suite 525
Buffalo, New York 14202
(716) 845-5215
(IAX) (716) 845-5215

Street, Buffalo, New York at on October 10, 1996 by way of a photo array and the defendant was allegedly again identified by photographs on December 18, 1996 before the Grand Jury by Gerald Webb, Elizabeth Hernandez, Adrian Morrow and Mia Morgan.   Upon information and belief said photo arrays were unduly suggestive rendering any in court identification unreliable.

22)  Based on the foregoing, defendant requests an Order of this Court suppressing from the use at trial any and all identification testimony resulting from the photo arrays, which were unduly suggestive, in violation of the defendant's rights or in the alternative, that this Court conduct a <u>WADE</u> hearing to determine the admissibility of said identification testimony.

### V. CONCLUSION

BASED ON THE FOREGOING, your deponent requests the Court grant the relief sought herein.   In the alternative, the defense requests a hearing to determine these issues.   The defendant specifically reserves the right to make any other and further motions as may be necessitated following a hearing on these issues.

MARK A. WORRELL, ESQ.

Sworn to before me this
4TH day of March, 1997

Notary Public

SHANI L VERA
Notary Public State of New York
Qualified in Erie County
My Commission Expires

MARK A. WORRELL
Attorney and Counselor at Law
Delaware Avenue, Suite 525
Buffalo, New York 14202
(716) 883-5215
(FAX) (716) 883-5215

# EXHIBIT

# I

Page 1 of 2

DEPARTMENT OF
CENTRAL POLICE SERVICES
FORENSIC LABORATORY
ERIE COUNTY

ANALYSIS REPORT

SUBMITTING AGENCY:  Buffalo Police Department          ECU
------------------------------------------------------------
DEFENDANT(S):  I.P.

COMMENTS:  Homicide Shooting and Assault.
           BPD Hom. #95-180  Sheldon Newkirk (deceased)
           and ▓▓▓▓▓▓▓▓▓▓▓ (victim).

LAB NO.:  102907                CASE NO.:  LP 95-0654

DATE RECEIVED:   10/23/95       CD NO.:  243602

DATE COMPLETED:   4/23/97       INV. OFFICER 1: A. Streicher

DATE OF REPORT:  5/05/97        INV. OFFICER 2:
------------------------------------------------------------
DESCRIPTION OF EVIDENCE:

Three fired bullets - BPD Items 11, 19, 20.

Four fired 9mm luger cases - BPD Items 1, 2, 3, 4.

Four fired 380 auto cases - BPD Items 21, 22, 23, 24.
------------------------------------------------------------
RESULTS:

AMENDED REPORT  -  Report No. 5

The submitted fired copper jacketed bullet from Item 19 is
consistent with 380 auto caliber.  Its rifling characteristics
consist of six land and groove impressions with a right twist.
It exhibits individual characteristics of comparative value.
There are numerous makes and models of firearms with similar
class characteristics.

The two submitted fired copper jacketed bullets from Items 11 and
20 belong to the 38/357 caliber class.  They both exhibit rifling
characteristics consisting of five land and groove impressions
with a right twist.  They exhibit individual characteristics of
comparative value.  Some commonly encountered firearms with
similar class characteristics include revolvers of
Smith & Wesson, Ruger, Taurus, INA makes and derringer pistols of
Rohm make.

Page 2 of 2

LAB NO.:    102907

CASE NO.:  LP 95-0654

CD NO.:  243602
-----------------------------------------------------------------
(Report No. 5  cont'd.)

The four submitted fired 9mm luger cases from Items 1, 2, 3 and 4
share consistent class characteristics with one another.   They
exhibit individual characteristics of comparative value.

The four submitted fired 380 auto cases from Items 21, 22, 23,
and 24 share consistent class characteristics with one another.
They exhibit individual characteristics of comparative value.

I affirm that I conducted the analysis documented herein.

Bert Pandolfano
SENIOR FIREARMS EXAMINER


bjw

cc:   ADA M. Cooper
      BPD Homicide

P-1302

#1 | SPENT CASING — IN STREET (Boehm) — 45'4" W of Pole #35 (Boehm)
9mm, F.C. Luger (wet)  1'0" S of N side curb edge

#2 | SPENT CASING — IN STREET (Boehm) — 38'7" W of Pole #35 (Boehm)
9mm, Win. Luger (wet)  2'9" S of N curb edge

#3 | SPENT CASING — IN STREET (Boehm) — 38'7" W of Pole #35 (Boehm)
9mm, Win. Luger wet  1'6" S of N curb edge

#4 | Spent Casing — IN STREET (Boehm) — 38'7" W of Pole #35 (Boehm)
9mm, Win. Luger (wet)  2'0" S of N curb Edge.

#5 | Swabbing of Wes — in Street (Boehm) — 38'5" W of Pole #35 (Boehm)
11'5" S of N curb edge

#6 | Glove (wet) — IN Street (Boehm) — 31'4" W of Pole #35 (Boehm)
21'8" S of N Curb Edge

#7 | HAT — (wet) — IN Street (Boehm) — 26'8" W of Pole #35 (Boehm)
Black, w/ 2 holes  17'3" S of N Curb Edge

#8 | HAT (wet) — IN Street (Boehm) — 34'11" W of Pole #35 (Boehm)
Black  6'3" S of N Curb Edge

#9 | Gold Color Band (wet) — IN Street (Boehm) — 37'5" W of Pole #35 (Boehm)
— Gold in color  — 6'7" S of N curb Edge

95-0654

| #10 | SWABBING of DRS — Fm Floor of Porch    -2'9" S of N EDGE of Porch |
| | AT 29 Boehm    5'4" W of E EDGE of Porch |

| NOTE | Hole in window, Eastern most Side of Front Porch of 29 Boehm. |
| | (Hole in Frame of E. Window w/Side Frame)    -24" up From Floor of Porch |
| | Thru + Thru. Into Interior w Side Wall Living Room     9" W of E Side Window Fra |

| #11 | Spent Bullet — Removed From Above 4th Stair    -2½" up Fm Top of Stair |
| | From 1st Floor Hallway. To    - In corner of Stair |
| | Upper Apt.    Kickplate + E Side Wall |

| #12 | Swabbing of DRS - N.E.Side-Front Hall Wall    -44" up From Hall Floor |
| | -72" S of N inner porch Wall |

| #13 | Swabbing of DRS - Removed From chair L. Arm    -47" S of N Wall (Kitchen |
| | Area in Kitchen of Upper Apt 29 Boehm - 23¼ E of W Wall |

| 10/21/95 | Collected The Clothing of "Ridgeway" Fm P.O. Daniels while in |
| 0335 hrs | ECMC-ER Hallway Are As Follows |
| #14 | NO EVIDENCE LISTED ON This Envelope. |
| #15 | 1 Pair of Green Pants w/ Belt Attached (WET) — WRS Make-Guess |
| | i Pager - Motorola - Ultra Express (WET), / 1 Key chain w/ 11 Keys / 2 - Unattached Keys/ |
| | 1- Bag of Vegetable Matter / 1- Watch "Tommy Filfiger" / 29 - One Dollar Bills |
| | in U.S. Currency / One U.S. Quarter / 1 - Hospital Property Bag / 1 - Hospital |
| | Reciept /. |

| Note | Physical Evidence #14 Skipped    95 0654 |

P-1302

| 10/21/95 | Collected The Clothing of "NEWKIRK" FROM P.O. DANiels |
| 0335 hrs | while in ECMC-ER HAilWAY ARE AS Follows : |
| #16 | 1 - BlAck PAir of SweAtpANTS w/DRS (DAmp) / 1 - BlAck PAir of |
| | Jeans "NATURAl STUFF", Size - 36L w/WRS (DAmp / 1 - PAir of Swimmi |
| | Shorts, color - AQUA w/WRS (DAmp) / 1 - Blue PAir of JeANS "Blue |
| | ZoNe", w/WRS With BlAck Belt ATTAched (DAmp) / 1 - White "T" shirt |
| | mAke "HANes", X-LArge w/WRS (DAmp) / 1 - Blue Pull over Hooded SweAt |
| | shirt w/WRS (DAmp) / 1 - White Sock / 1 - HospiTAl BAg / 1 - Hospital Recp |
| | / ONe BlAck "T" shirt w/WRS / 1 - ADDRESS Book / |
| 10/21/95 | Collected ClothiNG Fm DET SmArts while in ECU office of "RIDGEW |
| 0630 hrs. | ARE AS Follows : 1 - GreeN LeAther JAckeT - w/WRS (WeT) / 1 - |
| #17 | SweatShirt "Tommy CollecTioN" with Tommy CollecTioN Logo oN FroNT w/W |
| | (DAmp) / 3 - CoNcerT TickeTs / 1 - opeNeD pAck of NewPorT Cigs/ |
| | 1 - HospiTAl ClothiNG BAG / 1 - HospiTAl RecipT / .29 iN U.S. Curren |
| | w/DRS (iN PockeT of LeAther JAckeT) |
| 10/21/95 | ARRiveD AT The ERie CouNTy MoRGUE To Collect The INkeD FiNGerPriNTs |
| 1030 hrs | OF The DeceAseD "NewKiRK" AND collecTed The FollowiNG Physic |
| | EViDeNCE : |
| #18 | SAmple of HeAd HAir Fm DeceAseD |
| 18A | SAmple of The DeceAseD Blood obtAiNed Fm GEORGE WAshiNGToN. ) |
| NOTE | FiNger NAils To ShorT For SAmple CollecTioN |
| #19 | SpeNT BulleT - collecTed Fm. DR URU while AT The ECmC Morgue. |
| #20 | SpeNT BulleT - collecTed fm DR URU while AT The ECmc MoRGue |

| 10/21/95 | Arrived at the scene to conduct a daylight search of area |
| 1240 | and collected the following physical evidence: |
| #21 | Spent casing | 27'7" W of pole #35 >, Brdm |
| | .380cal, R.P. | 1'3" N of S curb edge |
| #22 | Spent casing | 29'5" W of pole # 35 on Boim |
| | .380 cal, R.P. | 8" N of S curb edge |
| #23 | Spent casing | 31'8" W of pole # 35 on Brdm |
| | .380 cal, R.P | 2" N of S curb edge |
| #24 | Spent casing | 27'6" W of Pole # 35 on Brdm |
| | .380cal RP | 3'2" N of S curb edge |

| 10/22/95 | All evidence pertaining to this investigation was submitted |
| 1530 hrs | to the CPS Lab to Bert Pandolfino for further analysis + |
| | examination and issued Lab # 102907 (AR) |

| 11/08/95 | Items of physical evidence numbered #5-10, 12+13, 15+18, +18A. |
| 0940 hrs. | From Richard Spencer under Lab # 102907. Stored in |
| | 4TH floor lock up. |

| 2/24/97 | All items of P.E. (2 boxes) to R. Spencer of CPS Lab for further |
| 1204hrs | processing under Lab # 102907. |

| 3/11/97 | All evidence pertaining to this case, was picked up from CPS Lab |
| 1030hr | for Smith under lab # 102907 will inventory when time permits. |

95-0654

P-1302

| 3/18/97 | Evidence inventoried, see copies of P-117 for inventory. Evidence |
|---------|-------------------------------------------------------------------|
| 0500    | banded & remains in ECU office awaiting transfer to Administration |

95 0654

EXHIBIT

J



# County of Erie

**DENNIS T. GORSKI**
**COUNTY EXECUTIVE**

**DEPARTMENT OF CENTRAL POLICE SERVICES**
**JOHN N. CARDARELLI, COMMISSIONER**

STATE OF NEW YORK
COUNTY OF ERIE                    SS. CERTIFICATION

I, _____ BERT PANDOLFINO _____ , Senior Firearms Examiner

for the County of Erie, Department of Central Police Services

Forensic Laboratory, do hereby certify that the annexed item is a

true and correct copy of an original record of an Erie County

Department of Central Police Services Forensic Laboratory report,

Lab Case Number __102907__ , dated __5/05/97__ .

The original of this record is on file in the Erie County

Department of Central Police Services Forensic Laboratory.

_____
SENIOR FIREARMS EXAMINER

Sworn to before me this

5TH day of _MAY, 1997_____

_____

___COMMISSIONER OF DEEDS_____

My Commission Expires _12-31-98_

DEPT. OF CENTRAL POLICE SERVICES FORENSIC LABORATORY
74 Franklin Street, Room 404, Buffalo, New York 14202   Phone: (716) 858-7408

EXHIBIT

K

ERIE COUNTY DEPARTMENT OF CENTRAL POLICE SERVICES
MEMORANDUM

FROM:     MICHAEL B. DUJANOVICH, LABORATORY DIRECTOR

DATE:     11/01/95

TO:       A. Streicher   Buffalo Police Department                    ECU

SUBJECT:  ANALYSIS REPORT
========================================================================

THE ANALYSIS IS COMPLETED IN THE FOLLOWING CASE.   PLEASE PICK UP THE
REPORT AND EVIDENCE AS SOON AS POSSIBLE.

                                    THANK YOU,

                                    ANALYST

| LABORATORY NO. | CASE NO. | DEFENDANT |
|---|---|---|
| 102907 | LP 95-0654 | Inv. Pending |

# EXHIBIT

# L

```
DESCRIPTION OF STATISTICS FOR LAB. NO. 102907          DATE: 10/26/95
***********************************************************************
```

```
                                        SUB
                                   CLASS CLASS ITEM WEIGHT
LAB #     STORAGE
102907    Misdemeanor Box           mj-p mj   0001    5.23
```

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## REPORT / FILE DISTRIBUTION LOG

| - REPORT -<br>(NUMBER & DATE) | -LAB SECTION-<br>(CHEM,F,S,TR) | TO: | - ISSUED -<br>DATE: | MANNER: | BY: |
|---|---|---|---|---|---|
| #5 + Photocopy | NC | Firenus File | 25pp. total | to ADA Cooper - MAI | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

EXHIBIT

M

**FORENSIC LABORATORY WORKSHEET**

LAB. NO. **102907**

CASE NO. _____

DATE _____

B. Pandolfino

RESULTS:

1-18-97 Evidence items for analysis. BPD items 1→4, 11, 19→24

4-23-97 ≡ four fired 9mm luy cases. as follows: items 1,2,3,4 marked for id'y mes
item ① IC headstamp & Brass primer.
item 2,3,4 Win headstamp + Ni primer.
item 1,2,3,4 class char — Hem 9PN c drag mark (fired on #4
— Ext + pr EJr                    Concen. circ within 9PN aperature
    not discernible          — parallel BF marks

≡ four fired 380 auto cases as follows. marked for ID by me.
items 21, 22, 23, 24  RP headstamp c Ni primer
— 9PN hem c concen. circle. & 9PN aperature
— EXT 8°°    EJr not distinct   BF-semi circ.

≡ one fired bullet item 19 38/9mm class consistent c 880 auto
marked for ID   90.1gr   JHP design c each fax
Foreign material present within unexpanded HP. cavity.
Rg GRt lin 0.050 — 0.053"   6 in 0.125 — 0.130" Incl char

≡ one fired bullet. item 20   Semi jack HP design some key damage 38/357 class
125.6 gr.   very beveled cannelure jach box   marked for ID   Rig. 5 Rt lin 0.095" — 0.097"   Incl char present
6 in 0.115" — 0.117"

CONT'D to over on reverse side

DCPS-L-2A (Rev. 3/94) ECCP

P-2  D. Kanelweizin  4014/02907

4/23/97
cont'd.

one fired bullet item 11 jack ē mush nose mutul/fag
sing cannelure damaged  123.5gr  woodlike fibers embed
in nose.
Rig. 5 RH  liw ≈ 0.098"  GW ≈ 0.115"
few ind char present.  38/357 cal. class.

5-5-97  Mr. Cooper ADA to lab. ē evidence
— asked to examine evidence #9 & #o  — Bases of Both
Bullets exhibit scribed markings other than
mine — however only base of bullet #o exhibits a
symbol consistent ē the numeral "2" (two).

Also — discrepancy in evidence description Brought to my
attention.  amended rept #5 was issued



EXHIBIT

N

# FORENSIC LABORATORY
# WORKSHEET

LAB. NO. **102907**

CASE NO. _____

DATE _____

B. Pandelfino .

RESULTS:

7-18-97 Evidence items for analysis BPD items 1→4, 11, 19→24

4-23-97 ≡ Four fired 9mm luger cases as follows: items 1234 marked for id by mes

item ① FC headstamp & Brass primer.

item 2,3,4 Win headstamp + Ni primer.

item 1,2,3,4 Class char — Hem ↑PN c̄ drag mark (faint on Concen. circ within 7PN aprate

—EXT +/or EJR — parallel BF marks

NOT discernible

≡ Four fired 380 auto cases as follows — marked for ID by me.

items 21, 22, 23, 24 RP headstamp c̄ Ni primer

—JPN hem c̄ concen. circle & JPN aperature

—EXT 5°°   EJR not distinct   BF- semi circ.

≤ one fired bullet item 11 38/9mm class consistent c̄ 380 auto

marked for ID   90, 191  JHP design c̄ jach tax

Foreign material present within unexpanded HP. cavity.

R) 6 rt  lin 0.050-0.055"   land 0.035 - 0.030" 2nd ch

≡ one fired bullet item 20  Semi jach HP design some tearing injur

damage.  0 class

125.6 gr.  sing knurld cannelure jach tax  38/357 class

marked land→  R) 5 Rt  lin 0.095-0.097"    2nd chr

4-23-97
C ont'd.

≡ One fired bullet. item 11   jack'd c mush rose material
sin, cannelure  damaged   123.5gr  Woodlite fibers embedded
in nose.

Rif. 5 R↑ l.w ≈ 0.098"   G/W ⋇ 0.115"
few ind char present.   38/357 cal. class.

EXHIBIT



O

ANDREW STREIC

```
1   95-3212
    12/18/96
2   11:25 A.M.
    GPH
3

4   A N D R E W   S T F E I C H E R, sworn, testified:

5

6   BY MR. COOPER:

7           Q       Would you please state your full name for

8   the record spelling your last name?

9           A       Andrew Streicher.   S-T-R-E-I-C-H-E-R.

10          Q       By whom are you employed?

11          A       Buffalo Police Department.

12          Q       What capacity?

13          A       Evidence unit.

14          Q       How long have you been with the evidence

15  unit?

16          A       Almost five years now.

17          Q       I'd like to direct your attention to October

18  21, 1995 sometime after one a.m.  Did you have occasion to

19  respond to a call of multiple shootings on Boehm Street in

20  the City of Buffalo?

21          A       Yes.

22          Q       Could you tell us when you arrived there if

23  you observed a victim on the porch at 29 Boehm?

24          A       When I arrived, the victim was already

25  transported to the hospital.
```

31

ANDREW STREICH

1       Q       And could you tell us whether or not the

2  other victim was still there that was in front of 33 Boehm?

3       A       No. They were both away from the scene.

4       Q       And could you tell us what if anything you

5  found while you were at the crime scene on that date?

6       A       Yes.  I collected physical evidence from the

7  shooting such as shell casings and clothing and swabbings.

8       Q       Now first of all, did you have occasion to

9  enter the residence at 29 Boehm?

10      A       Yes, I did.

11      Q       I'm going to show you first of all what's

12 been marked as Grand Jury Exhibit number 3 for

13 identification.  Ask you if you recognize what's shown in

14 that photograph?

15      A       The crime scene on Boehm.

16      Q       And I'm going to show you what's been marked

17 as Grand Jury Exhibit 6 for identification.  Ask you if you

18 recognize what's shown in that photograph?

19      A       This would be the bullet holes through the

20 window which traveled through the wall on the first floor

21 of 33 Boehm.

22      Q       Could you tell us approximately how many

23 bullet holes you observed at 29 Boehm when you went inside

24 there that day?

25      A       Two to three in the wall and one in the

32

1    staircase.

2         Q        Would that be the staircase leading upstairs

3    or the staircase leading up to the front porch?

4         A        The staircase leading upstairs.

5         Q        I'm going to show you what's been marked

6    Grand Jury Exhibit 5 for identification.  Ask you if you

7    recognize what's shown in that photograph?

8         A        This is the crime scene in front of 33

9    Boehm.

10        Q        There appears to be some numbered tags in

11   the street in front of that residence.  Could you tell us

12   what that is?

13        A        The articles of evidence that I collected

14   from the scene.

15        Q        And do you recall what those specific

16   articles were represented by the numbers one, two, three

17   and four?

18        A        Specifically, no.

19        Q        Could you refer to your notes and tell us

20   what those were?

21        A        Yes.  Okay.  Exhibits again items one

22   through five.  Number one is a spent casing which was a

23   9-millimeter from the FC Luger.  Number two is a spent

24   casing from a Winchester Luger.  Number three was a spent

25   casing from a Winchester Luger.   Four was a spent casing


                              33

ANDREW STREICH]

1    9-millimeter from a Winchester Luger.  And number five was

2    a swabbing of wet red stain.

3         Q      Now could all those 9-millimeter casings

4    come from the same gun?

5         A      Possibly.

6         Q      Now, those were found directly across the

7    street from 29 Boehm, is that correct?

8         A      Correct.

9         Q      Now could you tell us when you fire a pistol

10   whether or not a casing will eject from that gun when you

11   fire it?

12        A      Semi-automatic, yes.

13        Q      And is that the reason why you look for

14   casings when you respond to a shooting scene?

15        A      That's correct.

16        Q      So with a semi-automatic pistol when you

17   fire it, the casing would eject from the gun, is that

18   correct?

19        A      That's right.

20        Q      And generally do you know how far one might

21   eject?

22        A      Five to seven feet.

23        Q      All right.  Now, did there come a time when

24   you attended an autopsy for Sheldon Newkirk?

25        A      Yes, I did.


                              34

1      Q      And did you recover anything at the autopsy
2  for Sheldon Newkirk?
3      A      Yes, I did.
4      Q      And could you tell us what if anything you
5  recovered?
6      A      I recovered physical evidence numbered
7  eighteen which would be a sample of the head hair from the
8  deceased from the morgue.  Eighteen-a, a sample of the
9  deceased's blood.  That was from the mortuary in
10  Washington. Number nineteen was a spent bullet I recovered
11  from Dr. Uku that was taken from the body.  And number
12  twenty was another spent bullet which was collected from
13  Dr. Uku again taken from the body.
14      Q      I'm going to show you what's been marked as
15  Grand Jury Exhibit 4 for identification.  Do you recognize
16  that individual?
17      A      Yes, I do.
18      Q      Now is that the same individual, Sheldon
19  Newkirk that you were present for his autopsy on October
20  21, 1995?
21      A      Yes.
22      Q      And that's the same individual that you
23  recovered the bullets from that were given to you by Dr.
24  Uku, is that correct?
25      A      That's correct.

35

ANDREW STREICH

1   MR. COOPER:   Does anyone have any questions of this

2   witness?

3   BY MR. COOPER:

4        Q     I'm going to show you again what is marked

5   as Grand Jury Exhibit 5 for identification, a photograph.

6   When you first testified, you said 33 Boehm, but in fact

7   it's 29 Boehm where Sheldon Newkirk was found, is that

8   correct?

9        A     That's correct.

10       Q     Who was the victim that was in the vicinity

11  of 33 Boehm?

12       A     That was the address we were told to respond

13  to.

14       Q     Okay.   That was the original responding

15  address?

16       A     That's the log address.

17       Q     The Grand Juror would like to know.   Did you

18  get more than five casings at the scene?

19       A     Yes.

20       Q     All right.   And could you tell us where the

21  other casings were recovered?

22       A     The next day we came back on a daylight

23  search.   It was no longer raining out.   And where the water

24  was, like four feet away from the curb, it was under the

25  water.   So the next day there was no more water there and

36

ANDREW STREICH

1    there were four casings. And they were not of the

2    9-millimeter.

3         Q    So you found more casings that were not of

4    the 9-millimeter?

5         A    Right.

6         Q    Were they in front of 29 Boehm like the

7    other ones you found?

8         A    They were east of the house.

9         Q    And would that be towards Warren?

10        A    Yes.

11        Q    A Grand Juror would like to know if you know

12   this answer.  We know you're not a ballistics expert.  But

13   you indicated there were different makes for the

14   9-millimeter casings.  All right.  Can a 9-millimeter gun

15   fire bullets of different makes as long as they're

16   9-millimeter?

17        A    Yes.

18        Q    So you don't have to buy a 9-millimeter

19   Winchester, you can buy any make as long as it's

20   9-millimeter?

21        A    You can use any 9-millimeter casing that

22   will fit a 9-millimeter gun.

23   MR. COOPER:    A Grand Juror wants to know which person was

24   shot first and whether or not David Sell knew them both.

25   I'll respond to her that this witness was not there at the

37

ANDREW STREICI

1   time of the shooting and couldn't respond to that.

2   BY MR. COOPER:

3        Q     Grand Juror would like to know what are the

4   other type of casings you found other than the 9-millimeter

5   ones?

6        A     Item numbers twenty-one through twenty-four

7   which are four, those were spent casings from the .380

8   caliber class.  And they were Winchester Peters.

9        Q     So you found four .380 calibers?

10       A     The next day.

11       Q     And that was a position east of the house,

12  is that correct?

13       A     Yes.

14       Q     All right.  And that position east would

15  have been facing the side of the house rather than the

16  front of the house, is that correct?

17       A     That's right.

18       Q     Grand Juror would like to know.  Do you know

19  how many times the victim was hit, Sheldon Newkirk?

20       A     No.

21       Q     Could you tell us, was it more than once?

22       A     Yes.

23       Q     A Grand Juror would like to know whether or

24  not the spent bullets removed from the body matched the

25  9-millimeter casings.  And I'd advise him this is not a

38

1    ballistics witness.  He could not answer that question.

2          A       That's correct.

3          Q       A Grand Juror would like to know.  From your

4    observations everywhere the casings were found, could you

5    say whether or not any shots were fired from 29 Boehm out

6    toward the street?

7          A       No.  I can't say for sure.

8          Q       Did you find any evidence at all that any

9    shots were fired from 29 Boehm?

10         A       No.

11         Q   .   Did you find anything in any of the houses

12   across the street or any shell casings on the porch itself

13   of 29 Boehm?

14         A       No.

15   MR. COOPER:   All right.  You can step down.

                          *     *     *

16

17

18

19

20

21

22

23

24

25

                              39

A. Decision From Appellate Division dated May,2,2001

B. Certificate denying leave to appeal dated June 28,2001

C. Memorandum and Order from Judge Rossetti dated August 29,2003

D. Decision granting leave to appeal dated Dec. 1,2006

E. Appellate Division decision dated Oct. 3,2008

F. Certificate denying leave to appeal dated March 12,2009

G. Memorandum and Order from Hon. Penny Wolfgang dated Sept.14,2009

H. Order denying leave to appeal dated March 18,2010

SUPREME COURT OF THE STATE OF NEW YORK
*Appellate Division, Fourth Judicial Department*

(451) KA 98-05467. (Erie Co.) -- PEOPLE OF THE STATE OF NEW YORK,
PLAINTIFF-RESPONDENT, V DAVID SELL, DEFENDANT-APPELLANT. --
Judgment unanimously affirmed. Memorandum: Defendant appeals
from a judgment convicting him of murder in the second degree
(Penal Law §§ 20.00, 125.25 [1]), reckless endangerment in the
first degree (Penal Law §§ 20.00, 120.25), and criminal
possession of a weapon in the second degree (Penal Law former §
265.03) and sentencing him to consecutive terms of incarceration
aggregating 43½ years to life.  He contends that Supreme Court
erred in denying his *Batson* challenge to the prosecutor's
exercise of a peremptory strike during jury selection; that the
court erred in denying his motion to discharge an impaneled
juror; that the sentence is illegal insofar as the terms were
made to run consecutively; that the sentence is unduly harsh or
severe; that the court erred in allowing the People to amend the
indictment to set forth a theory of accessorial liability; that
the charge on accessorial liability diminished the People's
burden of proof; that there is insufficient evidence of
defendant's intent to kill; and that defendant was deprived of a
fair trial by cumulative error.
     The court did not err in denying defendant's *Batson*
challenge.  The explanation offered by the People -- that the
prospective juror had revealed himself to be a glib or unserious
person -- is race-neutral and not pretextual (*see, People v
Hinds,* 270 AD2d 891, 892, *lv denied* 95 NY2d 964; *People v Diaz,*
269 AD2d 766, *lv denied* 95 NY2d 852; *see generally, People v
Sprague,* ___ AD2d ___ [decided Feb. 7, 2001]).  The findings of
the trial court, which was in the best position to view the
prospective juror's demeanor, are to be accorded great deference
(*see, People v Hernandez,* 75 NY2d 350, 356-357, *affd* 500 US 352;
*People v Carelock,* 278 AD2d 851, *lv denied* ___ NY2d ___ [decided
Feb. 8, 2001]; *People v Ricks,* 269 AD2d 851, *lv denied* 94 NY2d
952).
     The court properly denied defendant's motion to discharge an
impaneled juror who had contacted the court following his
selection to disclose that he had served eight years as a Town
Justice at least 10 years earlier.  The juror had not revealed
that fact during his voir dire; he subsequently stated that he
had forgotten it until after he had left court that day.  When
questioned by the court and counsel, the juror repeatedly assured
the court that nothing in his background, including his service
as a Town Justice, would affect his ability to be impartial.  In
moving to discharge the juror, defense counsel expressly stated
that he was not relying upon any statutory basis for removal
under CPL 270.35.  Instead, defense counsel stated that, if he
had known earlier of the juror's background, he would have
exercised a peremptory challenge.  Defendant's present contention

*A*

-- that the juror was grossly unqualified to serve -- is
therefore unpreserved for our review.  In any event, that
contention has no merit.  That the juror had served as a Town
Justice 10 years earlier constituted no basis for discharging him
(see, Judiciary Law § 510; see also, L 1995, ch 88 [repealing
numerous occupational disqualifications and exceptions set forth
in the Judiciary Law]).  The record establishes that the juror
revealed his prior service as a Town Justice as soon as he
remembered it and recognized its significance.  Further, he was
forthright in response to subsequent questioning on the matter.
He thus did not engage in "misconduct of a substantial nature"
(CPL 270.35 [1]; see, People v DeJohn, 239 AD2d 184, 185, lv
denied 90 NY2d 904; cf., Matter of Mikel v Mark, 249 AD2d 993, lv
dismissed in part and denied in part 92 NY2d 873; People v
Robertson, 217 AD2d 989, lv denied 86 NY2d 846).  In addition,
the juror stated unequivocally that he could render an impartial
verdict, and thus he was not grossly unqualified to serve (see,
People v Buford, 69 NY2d 290, 298-299; cf., People v Cook, 275
AD2d 1020).

     The term of incarceration imposed on the count of criminal
possession of a weapon in the second degree was properly ordered
to run consecutively to those terms imposed on the murder and
reckless endangerment counts.  Possession with intent to use the
weapon unlawfully was an act separate and distinct from the
actual use of the weapon to kill one victim and to endanger the
life of another.  Moreover, before pulling the trigger, defendant
had formed the intent to use the weapon for the unlawful purpose
of (at the least) intimidating various individuals.  Therefore,
the crime of criminal possession of a weapon in the second degree
was completed before defendant fired the weapon, making him
subject to consecutive terms (see, People v Salcedo, 92 NY2d
1019, 1021-1022; People v Okafore, 72 NY2d 81, 83; People v
Rodriguez, 276 AD2d 326, 327; People v Rowe, 271 AD2d 217, 218;
People v Malave, 268 AD2d 363, 364, lv denied 95 NY2d 799; see
generally, People v Mack, 242 AD2d 543, 543-544, lv denied 91
NY2d 835).  Similarly, with respect to the counts of murder and
reckless endangerment, consecutive terms were authorized because
defendant fired multiple shots, all of which endangered a
surviving victim and at least one of which did not cause the
other victim's death (cf., People v Brathwaite, 63 NY2d 839, 843;
People v Porter, 256 AD2d 363, 364, lv denied 93 NY2d 976; People
v Salters, 255 AD2d 896, lv denied 92 NY2d 1038).

     The contention of defendant that the evidence is legally
insufficient to establish his intent to kill is not preserved for
our review (see, People v Finger, 95 NY2d 894, 895; People v
Gray, 86 NY2d 10, 19).  In any event, that contention is lacking
in merit.  The jury reasonably could find intent to kill based
upon the nature of the act and defendant's specific threat to
kill (see, People v Marzug, ___ AD2d ___ [decided Feb. 7, 2001];
People v Phong T. Le, 277 AD2d 1036; People v Colon, 275 AD2d
797, lv denied 95 NY2d 904; People v Alexander, 174 AD2d 996,

*revd on other grounds* 80 NY2d 801; *see generally, People v Bleakley,* 69 NY2d 490, 495).

We have considered defendant's remaining contentions and conclude that they are without merit. (Appeal from Judgment of Supreme Court, Erie County, Rossetti, J. - Murder, 2nd Degree.) PRESENT: PINE, J. P., WISNER, HURLBUTT, SCUDDER AND KEHOE, JJ. (Filed May 2, 2001.)

# State of New York
# Court of Appeals

BEFORE: HON. GEORGE BUNDY SMITH, Associate Judge

THE PEOPLE OF THE STATE OF NEW YORK

Respondent,

against

DAVID SELL,

Appellant.

CERTIFICATE
DENYING
LEAVE

I, GEORGE BUNDY SMITH, Associate Judge of the Court of Appeals of the State of New York, do hereby certify that upon application timely made by the above-named appellant for a certificate pursuant to CPL 460.20 and upon the record and proceedings herein,* there is no question of law presented which ought to be reviewed by the Court of Appeals and permission to appeal is hereby denied.

Dated at   Albany   , New York
           June 28,   2001

*Order of the Appellate Division, Fourth Department, entered May 2, 2001, affirming the judgment of the Supreme Court, Erie County, entered September 12, 1997.

*Description of Order:

B

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

THE PEOPLE OF THE STATE OF NEW YORK

          -VS-                             Indictment No. 95-3212-001

DAVID SELL

                         Defendant

                         **Frank J. Clark, III, Esq.,**
                         Erie County District Attorney,
                         By: **Steven Meyer, Esq.**
                         Assistant District Attorney
                         For the People.

                         **Gregory McPhee, Esq.** For the Defendant.

### MEMORANDUM AND ORDER

ROSSETTI, J.

          The defendant moves pursuant to Section 440.10 of the Criminal Procedure Law to vacate a conviction entered on September 12, 1997. Following a jury trial the defendant was found guilty of Murder in the Second Degree (Penal Law, §125.25-1), Criminal Possession of a Weapon in the Second Degree (Penal Law, §265.03) and Reckless Endangerment in the First Degree (Penal Law, §120.25). The court imposed consecutive sentences that result in an aggregate indeterminate term of imprisonment of 43 ½ years to life. This matter was prosecuted by Assistant District Attorney Michael Cooper, and the defendant was represented by attorney Alan Goldstein.

The Appellate Division, Fourth Department unanimously affirmed the judgment ( *People v. Sell,* 283 A.D. 2d 920). On June 28, 2001 the Court of Appeals denied the defendant's application for leave to appeal (*People v. Sell,* 96 N.Y.2d 867).

In Point I of his motion, the defendant contends that the People failed to disclose agreements with Gordon Maston and Adrian Morrow to the effect that these individuals would receive favorable treatment in pending criminal matters in exchange for their assistance in prosecuting the defendant. Furthermore, the defendant alleges that Maston and Morrow testified falsely or inaccurately in connection with the cooperation agreements, and that the prosecutor failed to correct their testimony.

Under Erie County Indictment No. 97-0201-001 filed April 3, 1997, Gordon Maston and a co-defendant were charged with four(4) counts of Robbery in the Second Degree and Criminal Mischief in the Fourth Degree stemming from the forcible taking of a title to a motor vehicle. The clerk's minutes contain the notation that at a court appearance on October 29, 1997, the People offered a plea. On November 13, 1997, Maston entered a plea of guilty to Attempted Robbery in the Second Degree (Penal Law §160.10-2[b]) in Erie County Court (DiTullio, J.) in satisfaction of the indictment, at which time the court committed to impose a sentence of probation. On January 14, 1998, Maston was sentenced to five(5) years probation and ordered to pay restitution in the amount of $235.00. On August 29, 1998, he admitted to violating probation and was sentenced to a one(1) year term at the Erie County Correctional Facility.

The defendant's trial commenced on July 23, 1997 and concluded on July 31, 1997. After the jury was selected, defendant's attorney advised that the copy of Maston's NYSIIS furnished by the prosecutor was incomplete. In the course of resolving that issue, prosecutor Michael Cooper informed the court that "no deals or promises" have been made to Gordon Maston. Mr. Cooper candidly admitted that he had contacted his superiors prior to the indictment of Maston with regard to procuring a benefit in exchange for his cooperation, but

- 2 -

that his proposal was rejected ( trial transcript, pp. 13-14).

Gordon Maston testified that knew the defendant, and in fact had previously shared a house with him. Maston was dating Lisa Newkirk, the sister of the homicide victim. On October 21, 1995, Maston had walked to Lisa Newkirk's home at 29 Boehm Street. Upon arriving, he observed the defendant, armed with a chrome pistol, and another individual shooting at a person on the porch. A short time later, at the corner of Bailey and Boehm, the defendant pulled up in a car and stated to Maston that he had just "bodied a guy", taken by Maston to mean that the defendant had killed someone.

On direct examination, the People elicited that Maston was presently under indictment for the robbery of his ex-girlfriend charged in Indictment No. 97-0201-001. Maston stated that while that matter was pending in the grand jury, he contacted Assistant District Attorney Cooper and advised that he had observed the shooting at 29 Boehm. Maston testified that despite coming forward, he was nevertheless indicted and received "no deal" for his cooperation. In response to questions from Mr. Goldstein, Maston reiterated that he had received no promises from the prosecutor, and had no expectation of receiving a benefit in return for his testifying. Seeking to discredit the witness, counsel elicited that although the shooting occurred in October 1995, Maston did not contact the prosecutor until he was charged with robbery in 1997.

The defendant contends that the prosecutor permitted Maston to testify falsely that he had received no consideration for cooperating. In support, the defendant first directs the court's attention to a bail hearing held in Supreme Court at which Mr. Cooper appeared for the People. The defendant contends that Maston, who was allegedly on probation at the time, received a relatively favorable bail, suggesting the existence of a cooperation agreement with the prosecutor. The defendant also relies upon the minutes of Maston's sentencing, which reflect that the prosecutor reminded the court that its commitment to probation was

- 3 -

to a drug charge involving the possession of five grams of crack cocaine with intent to distribute. According to the minutes, the written plea agreement provided that if Morrow cooperated with federal prosecutors and provided information regarding drug activity, the prosecutor would move for a downward departure of the criminality prong of the federal sentencing guidelines. The prosecutor's making such a motion would be contingent upon his determination that the defendant provided sufficient information or assistance. The court set a sentencing date of July 11, 1997 but indicated that sentencing would be adjourned if Morrow was still providing. assistance.

Adrian Morrow was sentenced on October 17, 1997, some four(4) months after he testified at the defendant's trial. Morrow's attorney, Peter Todoro, advised the court that his client had provided "very compelling testimony... that elimated[sic] the alibi defense that was being put forth by Defendant David Sell". In moving for a downward departure from the guidelines, the prosecutor stated that although Morrow had not provided substantial intelligence information, the motion was based in part upon his testifying against the defendant.ᵉ The U.S. District Court granted the motion and sentenced the Morrow to 57 months imprisonment.

Morrow testified that on the day of the homicide, he was attending a party at 77 Warring Street. At some point, Morrow, the defendant, and two(2) other men- Parsons and Klee- left the party in order to pick up replacement speakers. The defendant drove the group to the Morrow's home at 260 Percy Street. While en route, they encountered three(3) men walking on Boehm Street, one of whom apparently kicked the rear of the defendant's car. The defendant exited the vehicle, argued with the men, and then returned to the car. Upon arriving at 260 Percy, Morrow exited the vehicle and carried the damaged speaker into the house. When he returned outside, the defendant and the two(2) other men were gone. Morrow then heard shots being fired from around the corner, and ran in that direction. He observed Sheldon Newkirk lying on the front porch at 29 Boehm Street and Michael Ridgeway on the ground. According to Morrow,

the defendant was firing a chrome pistol at the top of the house. Parsons and Klee were also in possession of handguns, but were not shooting.

On direct examination, Morrow stated that he had been indicted on federal drug charges prior to coming forward in the prosecution of the defendant, and had thereafter pled guilty. When asked if he was "locked into a specific sentence" under federal law, Morrow answered in the affirmative ( trial transcript, p. 165). On cross-examination, the witness confirmed that his federal sentencing had just been adjourned to August 15. However, Morrow testified that he did not know the reason for the adjournment, and denied that he had entered into a cooperation agreement with the federal prosecutor. The record reflects that counsel for the defendant was in possession of a letter (Defendant's Exhibit D for identification) which, from the context of counsel's comments, was apparently a request for an adjournment by the federal prosecutor so that Morrow could fulfill the terms of his cooperation agreement. Morrow denied that he had ever seen the letter, and it was not moved into evidence.

In their opposition, the People deny that they had actual or constructive knowledge of Morrow's plea agreement. The District Attorney also alleges that counsel's line of questioning indicates that Mr. Goldstein knew of the arrangement, mooting any issue of disclosue. In the alternative, the People argue that the existence of an agreement is immaterial, because there was overwhelming evidence of the defendant's guilt independent of Morrow's testimony.

The record supports the proposition that Mr. Goldstein was aware that Adrian Morrow had pled guilty in federal court, and that his sentencing was adjourned and remained pending at the time of the defendant's trial. However, without the benefit of defendant's exhibit D, the court cannot conclude, as the People propose, that counsel had actual knowledge of the existence of a cooperation agreement, let alone its specific terms.

However, the court finds that the defendant has failed to demonstrate that the District Attorney knew, or should have known, that Morrow had an agreement with the

- 6 -

federal prosecutor.   Although a copy of Mr. Todoro's letter of December 26, 1996 to the federal
prosecutor was sent to Mr. Cooper, that letter preceded the entry of the plea by some four (4)
months, and does not indicate that the parties had entered into a plea agreement. Nor should
knowledge of the agreement ultimately  negotiated by Morrow and the federal prosecutor be
imputed to the People. It is well settled that  the prosecutor's obligation to disclose under *Brady*
does not extend to documents or information pertaining to a distinct and unrelated case that were
neither in the People's control nor the product of a joint investigation with federal authorities
( *Kyles v. Whitley*, 514 U.S. 419; *People v. Santorelli*, 95 N.Y. 2d 412; *see, People v. Ortiz*, 209
A.D 2d 332  [1st Dept.-1994]).

               Lastly, but not less significant, is the fact that Morrow's federal plea deal
required him only to assist the authorities with respect to drug activity.   The agreement, as
memorialized in the plea transcript, contains absolutely no reference to the prosecution of the
defendant or any matters unrelated to drug activity. The first mention of the defendant occurred
at  Morrow's federal sentencing, when the federal prosecutor, in his discretion,  justified his
motion for a downward departure primarily  upon Morrow's assistance in convicting the
defendant. Therefore, although Morrow certainly benefitted from that assistance, it was not a
condition of his federal plea agreement and therefore not subject to disclosure.

               Since the defendant has failed to substantiate that the District Attorney had
actual or constructive knowledge of Adrian Morrow's agreement with the federal prosecutor, the
People cannot be made responsible for Morrow's false testimony or misstatements, if any,
regarding that agreement.

               In the remaining branch of his motion, the defendant contends that he is
entitled to *vacatur* because his attorney failed to provide effective assistance. Among the
defendant's specific allegations is the assertion that Mr. Goldstein failed to challenge juror
number eleven for cause because the juror responded equivocally to questions regarding his
ability to be impartial.

- 7 -

The court is in agreement with the District Attorney that this argument should be rejected because sufficient facts appear on the record to have permitted the defendant to raise this issue on direct appeal but he failed to do so (CPL 440.10, subd. 2[c ]; *People v. Cooks*, 67 N.Y. 2d 100, 103). Moreover, the Appellate Division found that the defendant had failed to preserve the related claim that juror 11 was grossly unqualified to serve, but that the claim would have no merit in part because " the juror stated unequivocally that he could render an impartial verdict" (*People v. Sell, supra* at 922). While not controlling, that court's comment suggests that counsel could have reasonably concluded that the juror number 11 satisfied the trial court that he could be impartial, and that a challenge for cause on that basis would not have been successful.

The defendant also faults counsel for not reviewing the grand jury minutes with respect to "documents questioned by a Grand Juror concerning bullets and ballistics" However, since the defendant does not identify the documents, set forth their content or explain how he could have benefitted, the court finds no merit to his claim (CPL 440.30, subd. 4[b].

The court also finds no merit to the assertions that counsel failed "to carefully review case file and to present a defense" and should have objected to the prosecutor's vouching for the credibility of his witnesses, as those claims are in the form of bare and unsupported allegations (CPL 440.30, subd. 4[b]).

The defendant also claims that Mr. Goldstein was ineffective in failing defend the charges based upon the ground that the defendant was at home when the shootings occurred. The defendant alleges that he informed his first attorney, Mark Worrell, that his alibi could be corroborated by Jason Washington. After interviewing that individual, Mr. Worrell purportedly advised the defendant that Washington could testify that he reached the defendant telephone at his [the defendant's] home "some time later". Although the defendant does not produce the letter from Mr. Worrell, he offers an affidavit from Jason Washington sworn to on June 11, 2002 ( Exhibit G) setting forth that Washington telephoned the defendant at his home

- 8 -

after the victim's were taken to the hospital, and stating that Washington provided this information to both Mr. Worrell and Mr. Goldstein.

The defendant also attaches an affidavit from Mia Morgan corroborating that Jason Washington called the defendant at 29 Ritt Avenue at some unspecified time subsequent to the commission of the crimes, and confirming that this information was conveyed to both attorneys.

After reviewing the affidavits of Washington and Morgan, the court finds that the testimony of these individuals would be of little probative value. Credibility issues aside, the information provided does not exclude the possibility that the defendant had sufficient time to return to his home after the victims were shot but before medical personnel removed them from the scene. Therefore, counsel reasonably declined to pursue an alibi defense.

Lastly, the defendant contends that his attorney failed to advise the defendant that he [the defendant] had the final say in the decision to testify. This assertion is made solely by the defendant, unsupported by independent evidence. In any event, based upon the court's finding that an alibi defense would have little likelihood of success, and considering that defendant would have been cross-examined as to prior convictions, he has not demonstrated prejudice as a result of counsel's omission ( *Strickland v. Washington,* 466 U.S. 668; *see, DeLuca v. Lord*, 858 F. Supp. 1330).

NOW, THEREFORE, upon reading and filing the annexed motion dated August 5, 2002, the answering affidavit of Steven Meyer, Assistant District Attorney, sworn to on February 26, 2003, the defendant's responding affirmation, dated June 24, 2003, the District Attorney's answering affidavit, sworn to on July 8, 2003, and the defendant's supplemental exhibit dated July 31, 2003, and due deliberation having been had thereon, it is

ORDERED, ADJUDGED AND DECREED, that the said motion be and the same is hereby denied in all respects.

- 9 -

This decision shall constitute the order in this matter for appeal purposes, and no other or further order shall be required.  Pursuant to  Criminal Procedure Law Sections 450.15 and 460.15,  the Defendant may appeal from this order denying his post-conviction motion to vacate conviction  only if a certificate is obtained granting him leave to appeal.  If he wishes to appeal, the Defendant must apply to the Supreme Court, Appellate Division, Fourth Department, for such a certificate within thirty(30) days after service upon him of a copy of this Memorandum and Order [CPL 460.10(4)(a)].  If the Defendant is unable to pay the cost of such an appeal, he may apply to the Appellate Division for leave to appeal as a poor person.

**HON.  MARIO J. ROSSETTI**
**Acting Justice of the Supreme Court**

ENTER:

GRANTED:
August 29, 2003.
Celeste H. Marino
Court Clerk

- 10 -

SUPREME COURT OF THE STATE OF NEW YORK

Appellate Division, Fourth Judicial Department

2006 DEC -4  AM 10: 50

PRESENT: SCUDDER, P.J., HURLBUTT, GORSKI, MARTOCHE, AND SMITH, JJ.

ATTORNEY

KA 03-02189

PEOPLE OF THE STATE OF NEW YORK, PLAINTIFF-RESPONDENT,

V

DAVID SELL, DEFENDANT-APPELLANT.

Indictment No: 95-3212-001

Appellant having moved for a writ of error coram nobis vacating the order of this Court entered November 25, 2003 granting appellant's CPL 460.15 motion for permission to appeal from an order of Supreme Court entered in the Office of the Clerk of the County of Erie on August 29, 2003,

Now, upon reading and filing the affidavit of David Sell, sworn to October 15, 2006, the notice of motion with proof of service thereof, the opposing affidavit of Steven Meyer, sworn to October 27, 2006, and due deliberation having been had thereon,

It is hereby ORDERED that the motion be and the same hereby is granted, to the extent that appellant is hereby directed to file and serve the notice of appeal in accordance with CPL 460.10 on or before December 29, 2006.

Entered: December 1, 2006                    JOANN M. WAHL, Clerk



# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

992

KA 03-02189

PRESENT: SCUDDER, P. J., HURLBUTT, MARTOCHE, GREEN, AND GORSKI, JJ.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

                    V                                                    ORDER

DAVID SELL, DEFENDANT-APPELLANT.

RANDALL D. UNGER, BAYSIDE, FOR DEFENDANT-APPELLANT.

FRANK J. CLARK, DISTRICT ATTORNEY, BUFFALO (SHAWN P. HENNESSY OF
COUNSEL), FOR RESPONDENT.

--------------------------------------------------------------------------------

    Appeal, by permission of a Justice of the Appellate Division of
the Supreme Court in the Fourth Judicial Department, from an order of
the Supreme Court, Erie County (Mario J. Rossetti, A.J.), entered
August 29, 2003.  The order denied the motion of defendant pursuant to
CPL 440.10 to vacate the judgment convicting him of murder in the
second degree, criminal possession of a weapon in the second degree,
and reckless endangerment in the first degree.

    It is hereby ORDERED that the order so appealed from is
unanimously affirmed.

Entered:  October 3, 2008                    JoAnn M. Wahl
                                             Clerk of the Court

𝕾𝖚𝖕𝖗𝖊𝖒𝖊 𝕮𝖔𝖚𝖗𝖙
APPELLATE DIVISION,
Fourth Judicial Department,
Clerk's Office, Rochester, N.Y.

I, JOANN M. WAHL, Clerk of the Appellate Division of the Supreme Court in the Fourth Judicial Department, do hereby certify that this is a true copy of the original order, now on file in this office.



IN WITNESS WHEREOF,  I have hereunto set my hand and affixed the seal of said Court in the City of Rochester, New York, this   OCT 0 3 2008

*JoAnn M. Wahl*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Clerk.

# State of New York
# Court of Appeals

BEFORE: HON. ROBERT S. SMITH,

Associate Judge

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

**CERTIFICATE
DENYING
LEAVE**

DAVID SELL,

Appellant.

I, ROBERT S. SMITH, Associate Judge of the Court of Appeals of the State of New York, do hereby certify that upon application timely made by the above-named appellant for a certificate pursuant to CPL 460.20 and upon the record and proceedings herein,* there is no question of law presented which ought to be reviewed by the Court of Appeals and permission is hereby denied.

Dated: *March 12, 2009*
*New York, NY*

_____
Associate Judge

*__Description of Order__*: Order of the Supreme Court, Appellate Division, Fourth Department, entered October 3, 2008, affirming an order of the Supreme Court, Erie County, entered August 29, 2003.

STATE OF NEW YORK
SUPREME COURT :   COUNTY OF ERIE

THE PEOPLE OF THE STATE OF NEW YORK

                    –VS–                              Indictment No. 95-3212-001


DAVID SELL
                              Defendant


                         Frank A. Sedita, III, Esq.
                         Erie County Distric   Attorney
                         By: Donna A. Milli, r, Esq.
                         Assistant District At  orney,
                         For the People.

                         David Sell, Defendant, *Pro Se.*

                         MEMORANDUM AND ORDER


WOLFGANG,  J.

            Defendant moves to vacate judgment pursuant to Criminal Procedure Law

440.10.  Following a jury trial the defendant was found guilty of murder in the second degree

(Penal Law, §125.25-1), criminal possession of a weapon in the second degree (Penal Law,

§265.03) and reckless endangerment in the first degree (Penal Law, §120.25).  On September 12,

1997, Supreme Court [Rossetti, J.] imposed consecutive sentences, with the effect that defendant

is serving an  indeterminate term of imprisonment of 43 ½ years to life.  The judgment was

unanimously affirmed  ( *People v. Sell,* 283 A.D. 2d 920, lv denied 96 N.Y. 2d 867).

            Defendant moved for *vacatur* by motion dated August 5, 2002, contending

that the People failed to disclose cooperation agreements with two prosecution witnesses,



that those individuals testified falsely at trial, and that his attorney, Alan Goldstein, failed to provide effective assistance. The motion was denied in all respects ( *see,* Memorandum and Order, granted August 29, 2003 [Rossetti, J.]

Turning to the instant application, defendant now argues that the counts of murder and reckless endangerment should have been submitted to the jury in the alternative, and that trial counsel was ineffective in failing to object to the allegedly erroneous instructions, thereby permitted the jury to convict defendant on both counts. Defendant also contends that counsel failed to object to, or move to set aside, an allegedly inconsistent verdict.

The court finds that the record is sufficient to have allowed for review of these issues on direct appeal. Since defendant did not raise the issues in the Appellate Division, this branch of the motion must be denied ( CPL § 440.10[2][c] ; *People v. Cooks,* 67 N.Y. 2d 100, 103).

The claim raised in defendant's reply-that the imposition of consecutive terms of imprisonment for the murder and reckless endangerment convictions was unlawful-must also be denied, because that issue was considered on direct appeal and found to have no merit ( CPL § 440.10[2][a]).

Defendant raises an additional issue in the supplement to his motion. He alleges that counsel failed to review the grand jury minutes that were turned over at the trial , and argues that his attorney should have used the minutes to renew a motion to dismiss the indictment.

The portion of the minutes attached by defendant reflects that a grand juror asked Detective Streicher if the bullets recovered from the victim's body "matched" the spent 9 millimeter shell casings found at the scene. The prosecutor advised the grand jury that the witness could not answer the question because he was not a "ballistics witness." According to the defendant, although the prosecutor permitted Detective Streicher to answer other questions that called for expert testimony, he deliberately prevented the witness from answering this

- 2 -

"critical question ", so that the grand jury would not learn that there was no connection between the bullets recovered from Newkirk's body and 9 millimeter shell casings.

Defendant was indicted on December 23, 1996. He attaches page 1 of the firearms examiner's report dated April 23, 1997 (second reply Exhibit A) as well as an amended report dated May 5, 1997 ( supplemental pleadings, Exhibit 3c). These reports, which are dated some 5 months after the indictment was filed, state in pertinent part that one of the bullets removed from Newkirk's body "is consistent with 380 auto caliber" and the other "belong[s] to the 38/357 class". Based thereon, defendant concludes that neither of those bullets is linked to the 9 millimeter casings found at the scene or could have been fired from the gun allegedly possessed by him.

Defendant alleges that the prosecutor knew of the examiner's findings at the time of the grand jury presentment, but failed to adduce that evidence in the grand jury. This "prosecutorial misconduct" allegedly impaired the integrity of the grand jury proceedings, and defendant contends that trial counsel should therefore have used the grand jury minutes to renew the unsuccessful motion to dismiss the indictment made by his first attorney.

The record reflects that defendant moved to dismiss the indictment, and that after reviewing the grand jury minutes *in camera* the court found that the evidence and instructions were legally sufficient to sustain all counts thereof (Decision and Order dated March 31, 1997 [Rossetti, J.] ).

As a general proposition, the People "maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused" ( *People v. Mitchell,* 82 N.Y. 2d 509). Since defendant has not supplied the original firearms report, the court is unable to determine what ballistics information was available when the matter was presented to the grand jury. Absent such information, the People could reasonably have relied upon the medical examiner's conclusion that the fatal bullets were "probably 9 mm."

- 3 -

Furthermore, taking into account that no weapons were recovered, that the grand jury heard evidence that .380 caliber casings were also found at the scene as well as testimony that more than one individual was firing a weapon, the defendant has failed to demonstrate the existence of "new facts" constituting a viable basis for renewal of a motion to dismiss the indictment ( *see* CPLR 2221 [e] ). Lastly, since the defendant used the allegedly exculpatory evidence in cross-examination of the medical examiner at trial, any failure of the prosecutor to present such evidence in the grand jury was cured ( *People v. Woods*, 288 A.D. 2d 905).

The court has examined the original indictment filed with the clerk and finds that the indictment does in fact contain the signatures of the District Attorney and grand jury foreperson, thus refuting defendant's claim to the indictment was not properly signed.

There is no merit to defendant's assertion that the numbering of the indictment to correspond with the District Attorney's file number constitutes a jurisdictional defect.

NOW, THEREFORE, upon reading and filing the annexed motion dated March 18, 2009, the opposing affidavit of Donna A. Milling, Assistant District Attorney, sworn to on May 27, 2009, defendant's reply dated June 19, 2009, defendant's supplemental pleadings dated July 3, 2009, the People's supplemental opposing affidavit sworn to on August 12, 2009, and defendant's second reply, dated August 27, 2009, and due deliberation having been had thereon, it is

ORDERED, ADJUDGED AND DECREED, that the said motion be and is hereby denied.

This decision shall constitute the order in this matter for appeal purposes, and no other or further order shall be required. Pursuant to Criminal Procedure Law Sections 450.15 and 460.15, defendant may appeal from this order only if a certificate is obtained granting him leave to appeal. If he wishes to appeal, defendant must apply to the Supreme Court, Appellate Division, Fourth Department, for such a certificate within thirty(30) days after service upon him of a copy of this Memorandum and Order [CPL§ 460.10(4)(a)]. If defendant is unable to pay the

- 4 -

cost of such an appeal, he may apply to the Appellate Division for leave to appeal as a poor person.

GRANTED

HON. PENNY M. WOLFGANG
J. S. C.

ENTER:

- 5 -

## SUPREME COURT OF THE STATE OF NEW YORK
# Appellate Division, Fourth Judicial Department

KA 09-02153

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V

DAVID SELL, DEFENDANT-APPELLANT.

Indictment No: 95-3212-001

I, Henry J. Scudder, Presiding Justice of the Appellate Division, Fourth Judicial Department, do hereby certify that upon the motion of defendant for a certificate granting leave to appeal pursuant to CPL 460.15 from an order of the Supreme Court, Erie County, dated September 14, 2009, there is no question of law or fact which ought to be reviewed by this Court, and permission to appeal is hereby denied.

Dated:   3 — 18 — 2010

Hon. Henry J. Scudder
Presiding Justice