UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID SELL, 97-B-2642,
                    Petitioner

          v                                    10-CV-6182L

JAMES T. CONWAY,
                    Respondent
_____


**<u>MEMORANDUM OF LAW</u>**



                              FRANK A. SEDITA, III
                              Erie County District Attorney



s/Michael J. Hillery
MICHAEL J. HILLERY
Assistant District Attorney
of Counsel
Attorney for Respondent
Erie County District Attorney's Office
25 Delaware Avenue
Buffalo, New York   14202
(716) 858-2448
michael.hillery@erie.gov

TABLE OF CONTENTS

Page

Background. ......................................... 1

Point One.      Petitioner is not entitled to *habeas*
                relief based on his claim that the
                prosecutor used a peremptory challenge
                to remove a juror based on race. ....... 7

Point Two.      The trial court did not violate
                petitioner's constitutional rights in
                denying his motion to remove a sworn
                juror. ................................. 10

Point Three.    The People did not fail to meet their
                obligations under *Brady v Maryland*, 373
                U.S. 83 (1963). ....................... 15

Point Four.     Petitioner's claim that counsel was
                ineffective is without merit. .......... 20

Point Five.     Petitioner's contention of defective
                grand jury proceedings is not reviewable
                in a petition for *habeas corpus* relief.. 22

Point Six.      There is no merit to petitioner's claim
                that the People were allowed to
                unlawfully amend the indictment. ....... 24

Conclusion. ......................................... 25

<u>BACKGROUND</u>

By a Petition for a Writ of Habeas Corpus, petitioner seeks release from custody pursuant to 28 U.S.C. § 2254.  An answer to the petition is filed with this memorandum of law.

Under Indictment No. 95-3212-001, petitioner was charged with murder in the second degree (Penal Law §§ 20.00, 125.25[1]), criminal possession of a weapon in the second degree (Penal Law § 265.03), and reckless endangerment in the first degree (Penal Law § 120.25).  Petitioner was found guilty after trial of all three charges.  He was subsequently sentenced as a second violent felony offender to terms totaling forty three and one-half years to life in prison.

***Facts***

Petitioner's charges stemmed from his intentional killing of twenty-three year old Sheldon Newkirk, and his shooting at Gerald Webb, shortly after an argument.  The argument started when petitioner drove too fast and almost struck Newkirk, Webb, and others as they walked to a store.  Petitioner drove off, but said he'd be back (52-53, 195-196; numbers in parentheses refer to pages in the trial transcript).

1

Petitioner returned as he had threatened.  Newkirk, Webb, and others were on a porch when petitioner walked toward them, twirling a pistol.  Webb told the others to go inside.  An unidentified male with a gun was near a rail at the side of the porch (119).  Elizabeth Hernandez, who had been on the porch but got inside before the shooting started, heard petitioner say that he was going to kill all of them (97).  Virgil Williams, who had arrived shortly before petitioner, also made it into the house before petitioner started shooting (198-199, 218).  As Webb and Newkirk turned to go inside, petitioner began firing (54-59, 73, 90-91, 94, 119, 162).

Newkirk bled to death from a bullet that struck a kidney, the aorta, and the liver (355-360).  After the killing, petitioner told Gordon Maston that "I just bodied a n-----.  I got to bounce" (119, 121).

### *The Direct Appeal*

Petitioner filed a timely Notice of Appeal.  By an Order dated August 27, 1998, the court permitted him to conduct his appeal as a poor person.  David C. Schopp, Esq., of The Legal Aid Bureau of Buffalo, Inc., was assigned as appellate counsel.

On direct appeal, petitioner raised the following questions:

2

1.    whether he was denied a fair trial with the denial of his *Batson* motion;

2.    whether the court committed reversible error in denying his motion to dismiss a sworn juror;

3.    whether his consecutive sentences were illegal; and

4.    whether his sentence was harsh and excessive.

Additionally, petitioner raised several issues in a *pro se* supplemental brief, including

1.    whether the court improperly permitted the People to unlawfully amend the indictment;

2.    whether the court's providing an accomplice liability charge unconstitutionally lowered the People's burden of proof;

3.    whether the evidence was legally insufficient; and

4.    whether the cumulative effect of the alleged errors denied petitioner his right to a fair trial.


By an order dated May 2, 2001, the Appellate Division unanimously affirmed petitioner's conviction. *People v Sell*, 283 A.D.2d 920 (4th Dept. 2001). The court determined that petitioner's contentions were without merit.


By an order dated June 28, 2001, the Court of Appeals denied leave to appeal. 96 N.Y.2d 867 (Smith, J.).


**Collateral Attack**

By motion dated August 5, 2002, petitioner moved to vacate the judgment pursuant to CPL 440.10. Petitioner claimed

that the People failed to disclose agreements with Gordon Maston and Adrian Morrow whereby they would receive favorable treatment in pending criminal matters in exchange for their assistance in prosecuting petitioner.   Furthermore, petitioner alleged that Maston and Morrow testified falsely or inaccurately in connection with this agreement, and that the prosecutor failed to correct their testimony.   In another branch of his motion, petitioner contended, based on multiple grounds, that his attorney provided ineffective representation.

Upon reading petitioner's motion and the People's opposing affidavit, the court denied the motion as without merit. The Appellate Division unanimously affirmed the court's decision by its order dated October 3, 2008.

In a second motion to vacate the judgment dated March 18, 2009, petitioner contended that the counts of murder and reckless endangerment should have been submitted to the jury in the alternative, and that trial counsel was ineffective in failing to object to the allegedly erroneous instructions.  The court rejected this branch of the motion because petitioner did not raise the issue before the Appellate Division.   CPL 440.10(2)(c). Petitioner's claim in reply, that the imposition of consecutive terms of imprisonment for the murder and reckless endangerment convictions was unlawful, was also rejected because it had already

4

been considered on direct appeal and found to be without merit. Finally, petitioner contended that counsel failed to review the grand jury minutes that were turned over at trial, and that counsel should have used the minutes to renew a motion to dismiss the indictment.  This contention was rejected as without merit.

The Appellate Division denied permission to appeal the court's decision by an order dated March 12, 2009.

**The Habeas Corpus Petition**

Petitioner presents six claims, each of which was raised either in his direct appeal or in a subsequent collateral attack. His petition must be dismissed for the following reasons: 1) contrary to his contention regarding the denial of his *Batson* motion, petitioner has failed to overcome the presumption of correctness accorded to the state court's finding of no pretext; 2) denial of petitioner's motion to remove a sworn juror was proper, as there was no claim of deliberate concealment by the juror during jury selection sufficient to show a prejudicial impairment of petitioner's right to exercise a peremptory challenge; 3) the record does not support petitioner's contention that the People failed to meet their obligations under *Brady v Maryland*, 373 U.S. 83 (1963); 4) petitioner has failed to establish that trial counsel's representation was deficient, and that, but for the deficiency, it is reasonably probable that the outcome would have

been different; 5) petitioner's contention that the grand jury proceedings were defective is not reviewable in a petition for *habeas corpus* relief; and 6) petitioner's contention that the People were allowed to unlawfully amend the indictment to reflect accomplice liability lacks merit, and, in any event, there is no distinction between liability as a principal and liability as an accomplice.

<u>POINT ONE</u>

PETITIONER IS NOT ENTITLED TO *HABEAS* RELIEF
BASED ON HIS CLAIM THAT THE PROSECUTOR USED A
PEREMPTORY CHALLENGE TO REMOVE A JUROR BASED
ON RACE.

The Equal Protection Clause of the Fourteenth Amendment
prohibits using peremptory challenges to remove prospective jurors
based on race. *People v Payne*, 88 N.Y.2d 172, 181 (1996). Here,
the court accepted the prosecutor's explanation that he excused a
Hispanic venire person because of observable behavior that
convinced the prosecutor that the juror had a carefree attitude
that the prosecutor did not want in a juror. *See People v Diaz*,
269 A.D.2d 766 (4th Dept. 2000), *lv denied* 95 N.Y.2d 852; *Brown v
Kelly*, 973 F.2d 116 (2nd Cir. 1992), *cert denied* 508 U.S. 1084
(1993). The prosecutor explained that

> Every question he's asked is with -- has been
> with a smirk, a shake of the head. He just
> doesn't seem serious at all. Even when the
> Court was asking him questions and I *know it's
> not portrayed in the record*, but certainly the
> Court was observing of the carefree nature
> that this person has been answering the
> questions in this case ...
>
> (Jury selection: 133-134).

Petitioner did not meet his ultimate burden of persuasion
of establishing that the prosecutor actually removed the juror
based on an improper discriminatory purpose. *See People v Allen*,

7

86 N.Y.2d 101, 109-110 (1995).  Neither the petitioner nor the court quarreled with the prosecutor's observations.  The court's ruling necessarily took the juror's demeanor into consideration. When the state court determines the existence or absence of pretext in a prosecutor's exercise of a peremptory strike, a presumption of correctness is accorded that determination.  *See Miller-El v Cockrell*, 537 U.S. 322, 339-340 (2003).  There is no basis to disturb the court's determination here.

Petitioner's only argument below was that the prospective juror's ties to people in the law enforcement community would more typically result in a peremptory challenge by the defense. Background factors that are ordinarily viewed as favorable to the prosecution may be considered in determining whether a *prima facie* case of discrimination has been shown.  *See People v Rodriguez*, 211 A.D.2d 275, 278 (1st Dept. 1995).  However, the facially neutral reason supporting the challenge overcame that inference of discrimination.  *See Allen*, 86 N.Y.2d 101 at 109-110.

Petitioner refers to the prospective juror's employment and education to undermine the  validity of the prosecutor's observations regarding the prospective juror's attitude.  Though this argument is unexhausted, as it was not properly preserved for appellate review, it is, in any event, without merit.  Moreover, petitioner misrepresents the record by suggesting that the juror

8

held down two jobs while attending college.  The trial took place in the summer, and the record supports no more than that the juror was working two jobs that summer, and would be returning to school in the fall.

In any event, the prosecutor did not have to *prove* that the juror was "carefree."  It was enough that the court believed that the prosecutor exercised the challenge out of a *concern* about the juror's attitude.

Based on the foregoing, petitioner has failed to overcome the presumption of correctness accorded to the state court's finding of no pretext.  *See Miller-El*, 537 U.S. 322 at 339-340. The court's factual determination that the prosecutor did not intend to discriminate should not be disturbed.

<u>POINT TWO</u>

THE TRIAL COURT DID NOT VIOLATE PETITIONER'S CONSTITUTIONAL RIGHTS IN DENYING HIS MOTION TO REMOVE A SWORN JUROR.

During jury selection, prospective juror Stoddard stated that he had retired from dairy farming (jury selection: 114, 126). Shortly after being sworn, he tried to contact the court, and then informed a deputy that he had been a Justice of the Peace in Marilla, New York (jury selection: 142). The court and both counsel agreed to take up the matter at the end of jury selection.

Under subsequent questioning, Mr. Stoddard stated that he had served two terms as Justice of the Peace more than ten years earlier (jury selection: 208-209). He did not believe that his prior employment as a Justice of the Peace would affect his ability to be fair at this trial (jury selection: 207-208).

In order for petitioner to show, as he alleges here, a prejudicial impairment of his right to exercise a peremptory challenge, he must present a sufficient claim of deliberate concealment or "purposefully incorrect responses" during jury selection. *McCoy v Goldston*, 652 F.2d 654, 658 (6th Cir. 1981). The record demonstrates that petitioner has failed to present such a claim, that no such claim is sustainable on the surrounding facts

10

and circumstances, and, therefore, that the court properly retained Mr. Stoddard as a sworn juror.

Counsel's only argument was that it would be unfair to keep Mr. Stoddard because counsel would have exercised a peremptory challenge had he known about Mr. Stoddard's background (jury selection:  213-214).  However, counsel cited no statutory or constitutional basis for such relief.  There is no statute that requires the court to dismiss a sworn juror on the basis of subsequent information that defendant claims would have resulted in the exercise of a peremptory challenge.

Petitioner waived application of the statutory bases for removal of a sworn juror when he said, "Is he grossly unqualified? The answer is probably not.  Is he unqualified?  Can I challenge him for cause?  Probably not" (jury selection: 213-214).  By making those statements, counsel directed the court *away* from deciding whether Mr. Stoddard was either grossly unqualified or subject to a challenge for cause.  Given counsel's concessions, he was not entitled to have Mr. Stoddard removed.

CPL 270.15(4) authorizes removal of a sworn juror *for cause* if the circumstances supporting the challenge come to light before the first witness is sworn.  However, Mr. Stoddard's status as a former Justice of the Peace would not have resulted in a

11

removal for cause.  Nor was there any basis to remove Mr. Stoddard
for misconduct under CPL 270.35.  The cases cited by petitioner in
his argument to the Appellate Division are distinguishable because
they involved juror concealment of information or other conduct
which *would* support a cause challenge.  Petitioner conceded that
there was no claim of deliberate concealment (appellant's brief, at
21).

          Petitioner's direct appeal challenge to Mr. Stoddard's
"potential bias" was unpreserved.  Petitioner did not seek Mr.
Stoddard's removal on the ground that he had "a state of mind that
is likely to preclude him from rendering an impartial verdict based
upon the evidence."  *See* CPL 270.20(1)(b).  Counsel did not argue
that Mr. Stoddard's answers revealed bias.  In any event, Mr.
Stoddard gave no answer that suggested bias.  *See People v Blyden*,
55 N.Y.2d 73 (1982).

          Petitioner's appellate argument that Mr. Stoddard should
have been discharged because he answered equivocally by stating
that he "believed" that he could be fair and impartial was also
unpreserved (jury selection: 208).  In any event, the context of
Mr. Stoddard's statement of belief was that he saw no reason why he
could not be fair and impartial.

12

Finally, petitioner's subjective assertion on appeal to the Appellate Division that a Justice of the Peace performs a significant law enforcement role runs headlong into Court of Appeals references to the "neutral and detached magistrate" that date back more than thirty years. *See, People v Montague*, 19 N.Y.2d 121, 123 (1967).

In any event, counsel did not argue that he was entitled to have Mr. Stoddard dismissed on this basis. Mr. Stoddard did not have any connection or natural affinity to favor any particular witness. *Compare People v Hoffstetter*, 256 A.D.2d 1171 (4th Dept. 1998), *lv denied* 93 N.Y.2d 853. Petitioner's complaint that he could have explored this "potential bias" had this been brought out during jury selection neglects to consider that counsel *was* given that opportunity. The court did not restrict the questioning of Mr. Stoddard.

Petitioner has failed to show a prejudicial impairment of his right to exercise a peremptory challenge, as he has not presented a sufficient claim of deliberate concealment or "purposefully incorrect responses" during jury selection. *McCoy*, 652 F.2d 654 at 658. His petition for *habeas* relief on this ground must be denied.

13

Based on the foregoing, the court did not err in retaining Mr. Stoddard as a juror.  The judgment should be affirmed.

14

POINT THREE


THE PEOPLE DID NOT FAIL TO MEET THEIR
OBLIGATIONS UNDER *BRADY V MARYLAND*, 373 U.S.
83 (1963).


Petitioner contends that the prosecutor suppressed material information. Specifically, he alleges that the prosecutor did not disclose cooperation agreements concerning charges pending against witnesses Gordon Maston and Adrian Morrow. As shown below, the prosecutor made no deal with Matson. With respect to Morrow, petitioner has not established that the prosecutor had actual or constructive knowledge about Morrow's federal plea agreement. Moreover, defense counsel was aware of Morrow's federal plea agreement. *See United States v Zackson*, 6 F.3d 911, 918 (2d Cir. 1993). In any event, that agreement was not material in light of the overwhelming evidence of petitioner's guilt, as established by other witnesses. *See United States v Petrillo*, 821 F.2d 85, 89-90 (2d Cir. 1987).


***Matson Did Not Receive a Deal***

Petitioner asserts that the prosecutor suppressed material information about a plea deal or cooperation agreement with Matson.

15

Generally, the prosecutor's disclosure obligation arises only "where the prosecutor and the witness have reached an understanding in which the witness's cooperation has been exchanged for some *quid pro quo* on the part of the prosecutor. *People v Novoa*, 70 N.Y.2d 490, 497 (1987).

Counsel for petitioner stated that on June 23, 2001, petitioner "discovered" the docket sheet for Gordon Maston's indictment under number 97-0201-001. Based on that, petitioner requested "discovery" of transcripts and other court proceedings under that indictment. Petitioner wanted to see Maston's full "rap sheet," to see if there existed a cooperation agreement, and to see if Mr. Maston was in jail on October 21, 1995.

This discovery request was without factual basis and legal authority. The docket sheet was always available to petitioner. Petitioner's suggestion that this office did not advise him that Maston was under indictment was contradicted by the record.

At the start of the trial, defense counsel acknowledged that he had received Maston's NYSIIS report (10). That report informed counsel that Maston had "been indicted under a certain indictment number for robbery in the second degree" (20). Even if it were true, as petitioner asserted, that he did not receive the

16

entire criminal history report, he was not entitled to it.  CPL 240.45.  Petitioner did not allege that the prosecutor did not provide him with a complete list of Maston's prior convictions or pending charges.

A prosecutor must disclose the existence of an agreement between the prosecution and a witness that induces a witness to testify. *People v Steadman*, 82 N.Y.2d 1, 7 (1993).  However, there was no deal here.  Consequently, the prosecutor did not, as alleged by petitioner, permit Maston to testify falsely that he had received no consideration for cooperating.

The prosecutor unequivocally stated that "no deals or promises have been made to Gordon Maston" (13).  This office did not terminate any prosecution or decline to prosecute any charge in exchange for Maston's testimony (14).

### *Knowledge of the agreement ultimately negotiated by Morrow and the federal prosecutor could not be imputed to the prosecutor.*

On April 18, 1997, Adrian Morrow pleaded guilty in U.S. District Court to a drug-related charge.  Petitioner alleges that the prosecutor knew, or should have known, that Morrow had an agreement with the federal prosecutor.  Although a copy of defense counsel's letter to the federal prosecutor was sent to the prosecutor, that letter preceded the entry of the plea by some four

17

months, and does not indicate that the parties had entered into a plea agreement.  Knowledge of the agreement ultimately negotiated by Morrow and the federal prosecutor could not be imputed to the prosecutor.  The prosecutor's disclosure obligations under *Brady* do not extend to information pertaining  to a distinct and unrelated case that was neither in the People's control nor the product of a joint investigation with federal authorities. *Kyles v Whitley*, 514 U.S. 419 (1995); *People v Santorelli*, 95 N.Y.2d 412 (2000).

Additionally, Morrow's federal plea deal required him only to assist the authorities with respect to drug activity.  The agreement, as memorialized in the plea transcript, contains no reference to the prosecution of petitioner or any matters unrelated to drug activity.  The first mention of petitioner occurred at Morrow's federal sentencing when the federal prosecutor, in his discretion, justified his motion for a downward departure primarily on Morrow's assistance in convicting petitioner.  Therefore, although Morrow benefitted from that assistance, it was not a condition of his federal plea agreement, and thus not subject to disclosure.

Petitioner has failed to substantiate that the District Attorney had actual or constructive knowledge of Adrian Morrow's agreement with the federal prosecutor.  The People cannot be made

18

responsible for Morrow's false statements or misstatements, if any, regarding that agreement.

<u>POINT FOUR</u>

PETITIONER'S   CLAIM   THAT   COUNSEL   WAS
INEFFECTIVE IS WITHOUT MERIT.

Petitioner contends that counsel was ineffective because
he failed to object to the jury instructions and to object to the
inconsistent verdict.   Petitioner's claim lacks merit, as he has
failed to establish that counsel's representation was deficient,
and that, but for the deficiency, there is a "reasonable
probability" that the outcome would have been different.
*Strickland v Washington*, 466 U.S. 668, 688-94 (1984).

Petitioner contends that counsel should have objected to
the court's charge to the jury which allowed them to find him
guilty of intentional murder and reckless endangerment -- crimes
which require different mental states.   Petitioner argues that the
charges should have been submitted in the alternative.   His
argument is without merit.

Petitioner was charged with two separate acts:   the
intentional murder of Sheldon Newkirk, and his separate shooting at
Gerald Webb, which resulted in the reckless endangerment charge.
The act of shooting at Webb was separate from the act of shooting
Newkirk with the conscious aim or objective of killing him.   It is

for this reason that consecutive sentences were permissible. Petitioner could indeed intend to kill Newkirk by shooting him and at the same time recklessly create a grave risk of Webb's death in a separate act, when he shot at him. *See People v Trappier*, 87 N.Y.2d 55 (1995).

Petitioner's similar claim that counsel was ineffective for failing to object to the inconsistent verdict is also without merit. In reliance on *People v Gallagher*, 69 N.Y.2d 525 (1987), petitioner contends that he cannot be convicted of reckless and intentional conduct arising out of the same act. The verdict was not inconsistent as it was possible for petitioner to have had two different mental states at two different times. Furthermore, it was not unreasonable for the jury to find that petitioner acted recklessly in shooting at Webb, and acted intentionally in shooting Newkirk. *See People v Williams*, 240 A.D.2d 441 (2nd Dept. 1997), *lv denied* 90 N.Y.2d 912; *People v Tankleff*, 199 A.D.2d 550 (2nd Dept. 1993).

Given his inability to establish a deficiency in counsel's representation, petitioner has failed to present a meritorious claim of ineffectiveness. *Strickland*, 466 U.S. 668 at 688-94.

<u>POINT FIVE</u>

PETITIONER'S CONTENTION OF DEFECTIVE GRAND
JURY PROCEEDINGS IS NOT REVIEWABLE IN A
PETITION FOR *HABEAS CORPUS* RELIEF.

Petitioner contends that the prosecutor misrepresented the facts or misled the grand jury that petitioner shot Sheldon Newkirk. Petitioner's claim of defective grand jury proceedings is not reviewable in a petition for *habeas corpus* relief. *See Lopez v Riley*, 865 F.2d 30, 32-33 (2d Cir. 1989). In any event, there is no merit to the contention.

Detective Andrew Streicher testified before the grand jury that he found four spent 9mm casings at the scene which were "possibly" from the same gun. The following day he returned to the scene and found four .380 caliber casings facing the side of the house. He opined that a 9mm gun can fire bullets of a different make as long as they are 9mm. Gerald Webb also testified before the grand jury. He recalled that more than one person was shooting a weapon that day. The autopsy report indicated that the bullets removed from the victim were "probably" 9mm.

In the People's response to petitioner's Demand to Produce, the prosecutor indicated that several items were being examined by the CPS lab and the report would be supplied when it

22

became available.  On May 5, 1997, during the *Wade* hearing, the prosecutor turned over an amended ballistics report showing that bullets from two different caliber weapons struck Newkirk. Petitioner was charged with second degree murder under a theory of accomplice liability and the testimony at trial from Gordon Maston was that someone else was shooting from the side of the porch (119).

Petitioner's claim is neither cognizable in a *habeas corpus* petition nor meritorious.

POINT SIX

THERE IS NO MERIT TO PETITIONER'S CLAIM THAT
THE PEOPLE WERE ALLOWED TO UNLAWFULLY AMEND
THE INDICTMENT.

Petitioner lastly contends that the People were allowed to unlawfully amend the indictment to reflect a theory of accomplice liability.  This contention is meritless.

The theory of liability is not an essential element of the offense, and there is no distinction between liability as a principal and liability as an accomplice.  *Chandler v Moscicki*, 253 F.Supp.2d 478, 486-88 (W.D.N.Y. 2003).

Petitioner's claim should be dismissed as without merit.

24

<u>CONCLUSION</u>

Based on the lack of any merit to petitioner's claims, respondent respectfully requests that an order be granted dismissing the petition.

DATED:      Buffalo, New York
            September 13, 2010

                              Respectfully submitted,

                              FRANK A. SEDITA, III
                              DISTRICT ATTORNEY


                   By:   s/Michael J. Hillery
                         MICHAEL J. HILLERY
                         Assistant District Attorney
                         Erie County District
                          Attorney's Office
                         25 Delaware Avenue
                         Buffalo, New York  14202
                         (716) 858-2448
                         michael.hillery@erie.gov

UNITED STATES DISTRICT COURT
          FOR THE
WESTERN DISTRICT OF NEW YORK
————————————————————————————————

DAVID SELL, 97-B-2642
                    Petitioner              AFFIDAVIT
                                            OF SERVICE
          v
                                            10-CV-6182L
JAMES T. CONWAY,
                    Respondent
————————————————————————————————

STATE OF NEW YORK )
COUNTY OF ERIE    )    ss:
CITY OF BUFFALO   )

          RITA A. PLATT, being duly sworn, deposes and says:

          That she is over the age of twenty-one (21) years and is
employed by the County of Erie at the Erie County District
Attorney's Office; that on September 13, 2010, she served the
within Memorandum of Law upon David Sell, petitioner, addressed to
David Sell, 97-B-2642 at his last known address, C/O Attica
Correctional Facility, P.O. Box 149, Attica, New York 14011, by
depositing a true copy of same, securely enclosed in a postpaid
wrapper, in a post office box regularly maintained by the United
States Postal Service at the Erie County Hall in the City of
Buffalo, New York in the above-captioned matter.


                                   s/Rita A. Platt
                                  RITA A. PLATT


Subscribed and sworn to before me
on September 13, 2010.



s/Donna A. Milling
DONNA A. MILLING
Notary Public, State of New York
Qualified in Erie County
My commission expires on February 9, 2012.