UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
DAVID SELL 97-B-2642

        V                                    TAVERSE

                                            10-CV-6182L

JAMES T. CONWAY

On Sept. 14th, petitioner received the people's Answer and memorandum of law.

Contrary to paragraph one in the people's Answering Affidavit, the Fourth Department Appellate Division did in fact grant Leave to appeal from an order denying my 440 motion. A copy of that decision was forwarded with my petition and under a separate cover labeled Exhibit D.

### POINT ONE

In response to point one (Batson claim), the people argue, that, any reference made about "the prospective juror's employment and education to undermine the validity of the prosecutor's observations regarding the prospective juror's attitude" was unexhausted and not properly preserved for appellate review.

However, the Appellate Division did not find my Batson claim to be in procedural default and rendered a decision on its merits. This removes any attempt made by the people to Bar federal review (Park v. California 202 F. 3d 1146, 1153). Thus subjecting this claim to the "clearly erroneous" standard set out in 28 U.S.C § 2254.

In order to prevail on a Batson claim the petitioner must rebut the "presumption of

1

correctness by clear and convincing evidence." In order to prevail, the petitioner relies on the following facts supported by the record to demonstrate a clearly erroneous decision made by the trial Court and Appellate Division.

1. The prosecutor failed to strike "similarly situated" jurors who had ties to law enforcement. As stated by the Supreme Court, this would tend to prove purposeful discrimination. "If a prosecutor's proffered reason for striking a black panelist just as well to an otherwise similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination" (Miller-EL v. Dretke 125 S. ct 2317 at 2325). If anything, Mr. Irene would have been an ideal juror for the prosecution based on his relationship to a A.D.A.

2. The prosecutor also failed to engage in any meaningful voir dire examination on the subjects he was concerned about. This would also suggest that the prosecutor's explanation was a pretext for discrimination (Miller-EL v. Dretke at 2328).

3. When challenging a juror based on observations of the juror's demeanor, the Second Circuit suggested that a prosecutor should refer to his contemporaneous notes (Brown v. Kelly, 973 F. 2d 116, 121). The prosecutor failed to do so when articulating his reasons for challenging Mr. Irene.

Based on these facts and those argued within my petition, the trial Court acted unreasonable in crediting the prosecutor's proffered reasons for his peremptory strike of Mr. Irene.

## POINT TWO

Petitioner relies on the argument presented in my petition.

## POINT THREE

In paragraph 8 of the people's answer, the people state that the record does not support the claim that they failed to meet their obligations under Brady v. Maryland. Because the State Court denied Petitioner's 440.10 motion without a hearing, the petitioner was not afforded an opportunity to develop the record. Thus being able to demonstrate further that the prosecutor was aware of Morrow and Maston's agreements and that he knew or should have known of the perjured testimony. Although petitioner has shown through various documents the A.D.A Cooper was aware of these agreements, the merits of the factual dispute were not resolved in a State hearing. The issues presented to the State Court were substantial allegations of newly discovered evidence not supported by the record. I would respectfully ask to be permitted to develop the record further. The Supreme Court has stated, "where specific allegations before the Court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the Court to provide the necessary facilities and procedures for an adequate inquiry." Bracy v. Gramley, 520 U.S. 899, 908-09.

Because the people's answer to point three is the exact argument provided in their response to petitioner's 440 motion. Page 16 of the people's memorandum of law pertains to issue raised in my 440 motion, not in my petition.

The people state on pg. 15 that Maston did not receive a deal. This is shown to be false with the assistance of Ex. E provided in my petition. The fact that A.D.A Cooper was not the prosecuting attorney in Maston's case does not matter. On this issue the Supreme Court has held: "The prosecutor's office is an entity and as such it is the spokesman for the government. A promise made by one attorney must be attributed, for these purposes, to the government." (Giglio, 405 U.S. at 154).

In regards to Morrow, the people argue that, knowledge of the agreement negotiated by

3

Morrow and the federal prosecutor could not be imputed to the prosecutor. The people fail to acknowledge that, A.D.A. Cooper was actually aware of Morrows agreement with the government. (See Ex F in petition).

The people minimize the December 26th letter by stating the letter does not indicate that the parties had entered into a plea agreement. Contrary to that assertion, that letter clearly identifies Morrow's cooperation with the government and A.D.A. Cooper. The people argue that this letter preceded the entry of Morrow's plea by four months. That fact only proves Morrow's statements went uncorrected by the prosecutor. This letter preceded petitioner's trial by almost 7 months. Therefore it cannot be disputed Morrow was allowed to testify falsely concerning his agreement.

Lastly, the people argue that, "there obligation under Brady does not extend to information pertaining to a distinct and unrelated case that was neither in the people's control nor the product of a joint investigation." (Citing Kyles v. Whitley, 514 U.S. 419). This is contradicted by a confidential report submitted by Det. Andres Ortiz. (See Ex. A).

This report speaks of a meeting in which Morrow provided information. In attendance was Morrow, his attorney Mr. Todaro, U.S. Attorney Chris Buscaglia and Det's McMahon, Donovan and Ortiz. At the conclusion of this meeting, the file was copied and transported to A.D.A. Christopher Belling by then A.D.A. Frank Sedita.

The people rely on Kyles v. Whitely to insinuate that their Brady obligations do not extend to information pertaining to a distinct and unrelated case. The people misinterpret Kyles v. Whitely. I continue to read this case and have not found this wording the people offer. What I have found is the prosecutor's "responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached. Moreover, that responsibility

remains regardless of any failure by the police to bring favorable evidence to the prosecutor's attention." (Kyles v. Whitely 115 S.ct at 1558-1559). No mention of a "distinct or unrelated case" is given. That fact remains ADA Cooper was actually aware of Morrow's agreement.

### Prejudice

The people minimize the importance of failing to disclose these essential plea agreements by arguing harmless error due to the weight of the evidence. In cases involving perjured testimony, the Supreme Court has stated: "A new trial is required if the false testimony could in any reasonable likelihood have affected the Judgement of the Jury." (Napue, supra, at 271, 79 S. ct at 1178. Although this rule is stated in terms that treat the knowing use of perjured testimony as error subject to harmless error review, it may as easily be stated as a materiality standard under which the fact that testimony is perjured is considered material unless failure to disclose it would be harmless beyond a reasonable doubt. The Court in Agurs justified this standard of materiality on the ground that the knowing use of perjured testimony involves prosecutorial misconduct and, more importantly, involves "a corruption of the truth-seeking function of the trial process."

Petitioner's conviction depended significantly on Morrow and Maston's testimony. The additional evidence of their plea agreements were material in the Jury's assessment of their credibility. Their interest in testifying falsely was kept from the jury. Under the Brecht Standard, it cannot be said that the perjured testimony did not have a substantial and injurious effect on the Jury's verdict.

Without the testimony of Maston and Morrow, the remaining testimony is rife with contradictions and inaccuracies. (See People's Ex. D Attorney affirmation dated June 24, 2003,

5

paragraphs 13-20).

Not only was the Jury denied an opportunity to uncover the bias in the testimony of these witnesses, but, even more disturbing, the Jury did not realize the witnesses were lying about their cooperation agreements, the petitioner respectfully request this Court to grant the petitioner an evidentiary hearing to further develop the record or any other relief the Court deems just and proper.

### POINT FOUR

After reading Sweet v. Bennett (353 F. 3d 135 2nd Cir. 2003) Petitioner concedes that point four is procedurally defaulted.

### POINT FIVE

Petitioner disagrees with the peoples response to point five that, "petitioner's claim is neither cognizable in a habeas corpus petition nor meritorious." The petitioner presents this Court with serious allegations of prosecutorial misconduct. The impartial and independent nature of the grand jury process was seriously impaired by A.D.A. Cooper's response to a Juror's question. Thus misleading the Grand Jury and engaging in unfair tactics. (United States v. Ciambrone, 601 F. 2d 616, 623 2nd Cir. 1979).

As stated by the Second Circuit "The Law of this Circuit is that dismissal of an indictment is justified to achieve either of the two objections: To eliminate prejudice to a defendant; or, pursuant to our supervisory power, to prevent prosecutorial impairment of the grand jury's independent role. (United States v. Hogan 712 F..2d 757 at 761 2nd Cir 1983) A.D.A. Cooper withheld evidence that would have negated guilt, thus resulting in prejudice to the petitioner and impairing the Grand Jury's

ability to exercise independent Judgment.

## POINT SIX

The petitioner relies on argument submitted in his petition.

I DAVID SELL DO HERBY CERTIFY THAT THE ABOVE INFORMATION IS TRUE AND I HAVE SUBMITTED THIS UNDER THE PENALTY OF PERJURY.

P-73 **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO Harold Litwin<br>Chief of Homicide | SUBJECT | DATE 6-6-96 |
|---|---|---|
| FROM Det.Andres Ortiz<br>Homicide Bureau | File 95-180<br>Sheldon Newkirk<br>33 Boehm | |

Attn:Lt.Wm.Conwall            **CONFIDENTIAL REPORT**

Sir:

    I Det.Ortiz did on 5-20-96 at 1030hrs. meet with U.S.Attorney Chris Buscaglia and Det's. McMahon & Donovan of C.C.T.F. at U.S. Attorneys office. The reason for this meeting was information from Adrian ▬▬▬▬▬▬ Buffalo N.Y. D.O.B ▬▬▬▬ on homicide file 95-180.

    In attendance was Adrian ▬▬▬ Attorney Peter Todaro who did advise his client to cooperate with us in this matter. In questioning Mr. ▬▬▬▬ it is learned that he was present at the scene at 33 Bohm and could be instrumental in a successful prosecution in this file.

    Mr. ▬▬▬ stated that they all were in attendance at a party at 72 Warren, in attendance was Michael Ridgeway,Jason last name unknown,Terry Ridgeway,Clay last name unknown and David Seil. Mr. ▬▬▬ stated that David has Sheldons x-girlfriend and Sheldon had a problem with it. He goes on to say that the girls name is Mea Morgan and she now lives on Taunton the car they were driving was Mea's car. He said it was definitely David Seil who shot Sheldon Newkirk and he would testify on this matter. Interview concluded and this writer told Chris Buscaglia that I would confer with the D.A. and get back to him on the necessity of Mr. ▬▬▬▬'s testimony.

    Interview was concluded and file was copied and transported to D.A.Christopher Belling by D.A.Frank Sedita, this report is a permanent record within this file,this writer will keep this office appraised on any and all new information pertaining to this file.

Respectfully Submitted

*[signature]*

Det.Andres Ortiz
Homicide Bureau

David Sell 97B2642
P.O. Box 149
Attica NY 14011-149

Court Clerk
U.S. District Court
100 State Street
Rochester, NY 14614

October 8, 2010

Re: Sell v. Conway
10-CV-6182L

Dear Court Clerk:

Please find enclosed my written response to the people's answer and memorandum of law. On the above date a copy was also mailed to the Erie County District Attorney's office. I certify that the above is true under the penalty of perjury.

D. Sell